UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEON CRAWFORD, #691535,

               Petitioner,

                                    CASE NO. 2:14-CV-13499
v.                                 HONORABLE GERSHWIN A. DRAIN

JEFFREY WOODS,

               Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

## I.    Introduction

This is a habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan prisoner Deon Crawford ("Petitioner") was convicted of second-degree murder, MICH. COMP. LAWS § 750.317, felonious assault, MICH. COMP. LAWS § 750.82, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court in 2012.  He was sentenced to 25 to 50 years imprisonment on the murder conviction, time served on the felonious assault and felon in possession convictions, and a consecutive term of five years imprisonment (reduced to two years imprisonment on appeal) on the felony firearm conviction.

In his habeas petition, as amended, Petitioner raises claims concerning the sufficiency and great weight of the evidence, the denial of a state evidentiary hearing and the effectiveness of counsel as to that issue, the prosecutor's use of peremptory challenges, the trial court's ruling on the peremptory challenge issue, the scoring of the

state sentencing guidelines and the accuracy of the sentencing information, and the effectiveness of appellate counsel. Respondent has filed an answer to the amended habeas petition contending that certain claims are untimely, that certain claims are procedurally defaulted, and that all of the claims lack merit. For the reasons set forth herein, the Court denies the amended petition for a writ of habeas corpus. The Court also denies a certificate of appealability and denies Petitioner leave to proceed in forma pauperis on appeal.

## II.    Facts and Procedural History

Petitioner's convictions arise from the shooting death of one man and the non-fatal shooting of another man in a residential area in Detroit, Michigan in April, 2011. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> Defendant lost control of a stolen car and crashed into several parked vehicles. He and his passengers, Stacey Harris and Rasheed Washington, fled. Othell Lightfoot, who owned one of the damaged vehicles, his brother David Hicks, Jr., and two companions left their homes to investigate. They encountered and confronted Harris. According to Hicks, defendant and another man approached the group and Lightfoot told Hicks, "I peep gang," which Hicks understood to mean that Lightfoot thought the men were "up to no good." When Lightfoot stepped down from the curb, defendant shot him in the face from a distance of approximately 2–1/2 feet. After defendant shot Lightfoot, the man who was with defendant asked defendant, "Hey, what [ ]ya doin'?" and hit defendant's hand, pushing the gun down. Hicks ran away. Defendant fired three or more shots at Hicks as he ran away. Hicks's foot and calf were injured by the gunfire. At trial, defendant admitted shooting Lightfoot and firing shots at Hicks. The principal issue at trial was whether defendant acted in self-defense. When the police discovered Lightfoot's body, his arm was extended into the waist area of his pants. Defendant testified that he shot Lightfoot because he thought Lightfoot had a weapon, but defendant acknowledged that he did not see one. There was no evidence that either Lightfoot or Hicks was armed with a weapon.

> The jury acquitted defendant of first-degree premeditated murder, MCL

750.316(1)(a), but convicted him of second-degree murder for the shooting
death of Lightfoot. Although defendant was charged with assault with intent
to commit murder, MCL 750.83, with respect to Hicks, the trial court granted
defendant's motion for a directed verdict on that charge and instead
instructed the jury on the lesser offense of felonious assault, without
objection by defendant. The jury convicted defendant of that offense, as well
as felon in possession of a firearm and felony-firearm.

*People v. Crawford*, No. 310179, 2013 WL 3335105, *1 (Mich. Ct. App. July 2, 2013)

(unpublished).

Following his convictions and sentencing, Petitioner filed an appeal of right with the

Michigan Court of Appeals raising claims concerning the sufficiency and great weight of the

evidence, the trial court's addition of the felonious assault charge, and the validity of his

felony firearm sentence. The court denied relief on the first two claims and affirmed

Petitioner's convictions, but remanded for correction of his felony firearm sentence from five

years to two years imprisonment. *Id.* at *1-7. Petitioner filed an application for leave to

appeal with the Michigan Supreme Court, which was denied in a standard order. *People*

*v. Crawford*, 495 Mich. 883, 838 N.W.2d 158 (2013).

In 2014, Petitioner filed his initial federal habeas petition raising the same claims

presented to the state courts on direct appeal, as well as a motion to hold his habeas

petition in abeyance and stay the proceedings so that he could return to the state courts

and exhaust additional issues concerning the effectiveness of trial and appellate counsel.

The Court granted that motion and stayed the proceedings. Petitioner then returned to the

state courts and filed a motion for relief from judgment with the state trial court raising

claims concerning the effectiveness of trial counsel, the conduct of the prosecutor, including

the use of peremptory challenges in jury selection, the right to an impartial jury and the trial

court's denial of a jury transcript request, the scoring of the state sentencing guidelines,

and the effectiveness of appellate counsel. The trial court denied relief on those claims

3

pursuant to Michigan Court Rule 6.429(C) (as to the guidelines scoring claim only), Michigan Court Rule 6.508(D)(3), and for lack of merit. *People v. Crawford*, No. 11-09682-01 (Wayne Co. Cir. Ct. May 20, 2015). The trial court also denied Petitioner's motion for an evidentiary hearing on his ineffective assistance of counsel claims. (Order dated Oct. 8, 2015). Petitioner then filed a motion to remand and a delayed application for leave to appeal with the Michigan Court of Appeals, which were denied because he "failed to establish that the trial court erred in denying his motion for relief from judgment." *People v. Crawford*, No. 330353 (Mich. Ct. App. April 28, 2016). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Crawford*, 500 Mich. 898, 887 N.W.2d 408 (2016).

Petitioner thereafter moved to reopen this case and proceed on an amended habeas petition. The Court granted that motion and reopened the case. Respondent subsequently filed an answer to the habeas petition, as amended, contending that it should be denied because certain claims are time-barred, certain claims are procedurally defaulted, and all of the claims lack merit.

## III.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

4

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas

relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*; *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, _ U.S. _, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to

apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

IV.    **Analysis**

    A.    **Timeliness & Procedural Default**

As an initial matter, Respondent contends that two of Petitioner's habeas claims are untimely and several of his habeas claims are barred by procedural default. The Court declines to address these procedural defenses. They are not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) (procedural default); *Smith v. State of Ohio Dept. of Rehab.*, 463 F.3d 426, 429, n.2 (6th Cir. 2006) (statute of limitations). Moreover, federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.

Such is the case here. The procedural issues are complex and intertwined with the substantive claims, particularly the effectiveness of counsel claims, such that the substantive claims are more readily decided on the merits. Accordingly, the Court shall proceed to the merits of Petitioner's habeas claims.

    B.    **Merits**

        1.    **Great Weight & Sufficiency of the Evidence (Claim I)**

Petitioner first asserts that he is entitled to habeas relief because the jury's verdict was against the great weight of the evidence and because the prosecutor failed to present sufficient evidence to support his convictions. In particular, he alleges that the prosecutor failed to sufficiently negate his claim of self-defense. Respondent contends that this claim

lacks merit.

As an initial matter, the Court finds that Petitioner is not entitled to habeas relief on any claim that the jury verdict was against the great weight of the evidence. It is well-established that habeas review is not available to correct errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in *Jackson v. Virginia*, 443 U.S. 307 (1979). Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review. A federal habeas court has no power to grant relief on the ground that a state conviction is against the great weight of the evidence. *Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002). Habeas relief is thus not warranted on such a basis.

The federal Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

A federal court views this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and

the state court on appellate review – as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89.

Under Michigan law, the elements of second-degree murder are: 1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *People v. Goecke*, 457 Mich. 442, 463-64, 579 N.W.2d 868 (1998) (citing *People v. Bailey*, 451 Mich. 657, 669, 549 N.W.2d 325 (1996)); MICH. COMP. LAWS § 750.317. Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to perform an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. *Id.* at 464 (citing *People v. Aaron*, 409 Mich. 672, 728, 299 N.W.2d 304 (1980)). Malice may be inferred from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm. *People v. Djordjevic*, 230 Mich. App. 459, 463, 584 N.W.2d 610, 612 (1998) (citing *Aaron*). Malice may also be inferred from the use of a deadly weapon. *People v. Carines*, 460 Mich. 750, 759, 597 N.W.2d 130 (1999). The elements of felonious assault are: (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery. *People v. Avant*, 235 Mich. App. 499, 505 (1999); MICH. COMP. LAWS § 750.82. The elements of felon in possession are:

(1) the defendant was convicted of a felony, (2) the defendant possessed a firearm, and (3) at the time of possession less than three or five years, depending on the underlying felony, has passed since the defendant completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines. *People v. Perkins*, 262 Mich. App. 267, 270, 686 N.W.2d 237 (2004), *aff 'd* 473 Mich. 626, 703 N.W.2d 448 (2005); MICH. COMP. LAWS § 750.224f. The elements of felony firearm are: (1) the defendant possessed a firearm, (2) during the commission of, or an attempt to commit, a felony offense. *People v. Akins*, 259 Mich. App. 545, 554, 675 N.W.2d 863 (2003) (quoting *People v. Avant*, 235 Mich. App. 499, 505, 597 N.W.2d 864 (1999)); MICH. COMP. LAWS § 750.227b.

As with any offense, the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense. *People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216 (1967). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including the identity of the perpetrator, *Kern*, 6 Mich. App. at 409, *see also People v. Johnson*, 146 Mich. App. 429, 434, 381 N.W.2d 740 (1985), and the defendant's intent or state of mind. *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997); *see also People v. Nowack*, 462 Mich. 392, 402-03, 614 N.W.2d 78 (2000).

With these state law principles in mind and applying the *Jackson* standard, the Michigan Court of Appeals denied relief on the insufficient evidence claim. The court explained in relevant part:

> Defendant contends that the evidence was insufficient to disprove self-defense beyond a reasonable doubt. In analyzing a challenge to the sufficiency of the evidence, this Court "reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable

doubt." *People v. Reese*, 491 Mich. 127, 139; 815 NW2d 85 (2012) (internal citation and quotation marks omitted). "All conflicts in the evidence must be resolved in favor of the prosecution and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v. Unger*, 278 Mich. App 210, 222; 749 NW2d 272 (2008).

When a defendant claims self-defense, the defendant has the initial burden of producing some evidence from which a fact-finder could conclude that the elements necessary to establish a prima facie case of self-defense exist. *Reese*, 491 Mich. at 155–156. "[O]nce the defendant satisfies the initial burden of production, the prosecution bears the burden of disproving the common-law defense of self-defense beyond a reasonable doubt" (internal citation and quotation marks omitted). *Id.* at 155.

"[T]he killing of another person in self-defense is justifiable homicide only if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself." *People v. Riddle*, 467 Mich. 116, 127; 649 NW2d 30 (2002). The initial aggressor is not entitled to use the doctrine of self-defense as justification. *Reese*, 491 Mich. at 158. A defendant's actions are judged from the circumstances as they appeared to him at the time and not as they actually existed. *Hurd v. People*, 25 Mich. 405, 412 (1872), superseded by statute on other grounds as recognized in *People v. Koonce*, 466 Mich. 515, 518–521; 648 NW2d 153 (2002); *People v. Green*, 113 Mich. App 699, 703–704; 318 NW2d 547 (1982).

Defendant's claim of self-defense turned on whether he honestly and reasonably believed that his life was in imminent danger and that use of deadly force was necessary. The police found Lightfoot with his left hand in his pants. Defendant testified that Lightfoot put his hand in his pants a couple of seconds before defendant pulled out his gun and shot Lightfoot. No one directly testified to the contrary. However, Hicks testified that after defendant fired the shot, defendant's companion pushed defendant's arm down and said, "Hey, what [ ]ya doin'?" This evidence supported an inference that defendant's companion did not perceive that Lightfoot was an imminent threat to their safety. Defendant's subsequent actions also called into question the credibility of his claim that he feared for his life. Defendant admittedly fired more than three shots at Hicks, who was fleeing, even though defendant did not see Hicks with a weapon. Moreover, defendant admitted that he initially lied to the police about his involvement in the offense and did not assert that he acted in self-defense until his lawyer suggested that the doctrine might apply.

Whether defendant had an honest and reasonable belief that his life was imminently endangered by Lightfoot and that shooting Lightfoot was

necessary to prevent such harm was a question of fact for the jury. The jury could have determined that defendant was the initial aggressor. The jury also could have determined that defendant did not have a reasonable belief that his life was in imminent danger in that Lightfoot had not displayed a gun. The jury could have determined that defendant did not have an honest and reasonable belief that shooting Lightfoot in the face[1] when Lightfoot was standing five feet away with his hand in his pants was necessary to prevent death or bodily harm. The jury also could have credited Hicks's testimony that defendant's companion questioned defendant's conduct immediately after the shooting and found that it demonstrated that defendant could not have honestly and reasonably believed that his life was in imminent danger or that Lightfoot presented a threat of serious bodily harm. In addition, the jury could have viewed defendant's conduct in firing additional shots at an unarmed Hicks, as Hicks was fleeing, as an indication that defendant's act of shooting Lightfoot was the product of a felonious intent and was not motivated by any concern for defendant's personal safety. Ultimately, the jury's verdict reflects its assessment of defendant's credibility. This Court does not interfere with the jury's determination of credibility. *Unger*, 278 Mich. App at 222. "'Juries, not appellate courts, see and hear witnesses and are in a much better position to decide the weight and credibility to be given to their testimony.'" *People v. Wolfe*, 440 Mich. 508, 515; 489 NW2d 748 (1992), amended 441 Mich. 1201 (1992), quoting *People v. Palmer*, 392 Mich. 370, 375–376; 220 NW2d 393 (1974). Viewed in the light most favorable to the prosecution, the evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant did not act in self-defense.

*Crawford*, 2013 WL 3335105 at *2-3 (footnote in original).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The testimony of the surviving shooting victim, Hicks, provided sufficient evidence to establish that Petitioner committed the crimes and that he did not act in self-defense. To be sure, a victim's testimony alone can be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (citing cases). Additionally, while the deceased shooting victim, Lightfoot, was found with his arm in the waistband area of his pants, there was no evidence that either of the shooting victims were armed at the time of the shooting.

---

[1]Defendant testified that he pulled out his gun, aimed, and fired, suggesting that he had the opportunity to determine where to shoot.

Petitioner also admitted that he did not see a weapon and the record indicates that he shot Lightfoot in the face at close range and then fired multiple shots at Hicks as Hicks was running from the scene. Such testimony, and reasonable inferences therefrom, establish that Petitioner was the person who shot the victims, that he did not do so in self-defense, and that he acted with the requisite intent to support his convictions.

Petitioner challenges the credibility determinations and inferences the jury drew from the testimony presented at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Cavazos*, 565 U.S. at 7; *Jackson*, 443 U.S. at 326; *Martin*, 280 F.3d at 618; *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict was reasonable. The evidence presented at the trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that Petitioner committed the shootings, that he did not act in self-defense, and that he had the requisite intent to support his convictions. Habeas relief is not warranted on this claim.

### 2.  Evidentiary Hearing & Effectiveness of Counsel (Claim II)

Petitioner next asserts that he is entitled to habeas relief because the state courts failed to hold an evidentiary hearing on his claim that trial counsel was ineffective for not requesting a manslaughter instruction, that trial counsel was ineffective in this regard, and that appellate counsel was ineffective for failing to raise those issues on direct appeal.[2]

---

[2]In his last habeas claim, Petitioner asserts that appellate counsel was ineffective for failing to raise his collateral review issues on direct appeal. The Court, therefore, will

Respondent contends that this claim is not cognizable in part, that it is procedurally defaulted, and that it lacks merit.

To the extent that Petitioner asserts that he is entitled to habeas relief because the state courts failed to hold an evidentiary hearing on his ineffective assistance of counsel claim, he fails to state a claim upon which habeas relief may be granted. This claim is based upon state law and does not justify relief in federal court. *See Hayes v. Prelesnik*, 193 F. App'x 577, 584 (6th Cir. 2006) (citation omitted). A state court's alleged failure to properly apply state law or its own procedural rules, even if well-established, is not cognizable on federal habeas review. *See Estelle*, 502 U.S. at 67–68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). This Court's power to grant a writ of habeas corpus only extends to errors in the application of federal law. *Id.* There is also no clearly-established Supreme Court law which recognizes a constitutional right to an evidentiary hearing on state post-conviction review to develop issues. *Hayes*, 193 F. App'x at 584; *Davis v. Ludwick*, No. 10-CV-11240, 2013 WL 1212833, *18 (E.D. Mich. March 25, 2013) (denying habeas relief on similar evidentiary hearing claim); *Hall v. Berghuis*, No. 07-12163, 2009 WL 2244793, *9 (E.D. Mich. July 27, 2009) (same).

Additionally, Petitioner cannot prevail on the underlying issue concerning the effectiveness of trial counsel. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective

---

address appellate counsel's conduct with respect to this issue as part of that claim.

assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both

'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

Petitioner first raised this issue on collateral review in the state courts. The trial court applied the *Jackson* standard and denied relief on this claim, essentially finding that trial counsel's decision not to request a manslaughter instruction was a matter of sound trial strategy that would not be second-guessed on collateral review. *Crawford*, No. 11-09682-01 at *4-7.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. A decision not to request charges on all possible lesser included offenses is ordinarily a matter of trial strategy and may be a reasonable decision. *See Tinsley v. Million*, 399 F. 3d 796, 808 (6th Cir. 2005); *see also Harrop v. Sheets*, 430 F. App'x 500, 506-07 (6th Cir. 2011) (the failure to request instructions on lesser included offenses is ordinarily a matter of trial strategy). The submission of lesser included offenses may give the jury a basis for finding a defendant guilty of a crime where the prosecution may be unable to prove the elements of the original crime beyond a reasonable doubt. Trial counsel in this case may have wished to avoid this possibility such that the decision not to request a manslaughter instruction was a reasonable trial strategy and was not ineffective assistance of counsel. *See Kelly v. Lazaroff*, 846 F.3d 819, 830 (6th Cir. 2017); *Edwards v. Mack*, 4 F. App'x 215, 217-18 (6th Cir. 2001) (counsel's waiver of jury instructions on lesser-included offenses was not ineffective assistance where defendant hoped to obtain an acquittal by having jury instructed only on murder charge).

Trial counsel's decision not to seek an instruction on manslaughter (*i.e.* that Petitioner acted in the heat of passion) was also consistent with Petitioner's asserted claim of self-defense. Trial counsel thus may have reasonably decided not to argue inconsistent theories of defense. *See Lewis v. Russell*, 42 F. App'x 809, 810-11 (6th Cir. 2002) (counsel's decision not to request jury instruction on lesser-included offense of voluntary manslaughter in murder trial constituted reasonable strategic decision consistent with goal to obtain a full acquittal based on self-defense and did not constitute deficient performance). Petitioner fails to establish that trial counsel was ineffective in this regard. Habeas relief is not warranted on this claim.

### 3.    Peremptory Challenges (Claims III & IV)

Petitioner also asserts that he is entitled to habeas relief because the prosecutor improperly used peremptory challenges based upon race in selecting the jury and the trial court erred in finding the prosecutor's rationales to be race-neutral. Specifically, Petitioner asserts that the prosecutor improperly excused prospective juror 2 (African-American woman) and prospective juror 3 (Native American male) based upon race. Respondent contends that these claims are time-barred, procedurally defaulted, and lack merit.

Although a criminal defendant has no right to have a member of a particular race on the jury, he or she does have the right to be tried by a jury whose members are selected by non-discriminatory criteria. *See Powers v. Ohio*, 499 U.S. 400, 404 (1991); *Taylor v. Louisiana*, 419 U.S. 522, 527-28 (1975). The Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from challenging potential jurors solely on account of their race. *See Batson v. Kentucky,* 476 U.S. 79, 89 (1986); *Lancaster v. Adams*, 324 F.3d 423, 432-33 (6th Cir. 2003).

To establish a prima facie case of purposeful discrimination in the selection of a jury

based upon the prosecutor's exercise of peremptory challenges, a defendant must show that he or she is a member of a cognizable racial group and that the prosecutor used peremptory challenges to remove members of the defendant's race from the jury. The defendant must also show that other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude jurors on account of their race. Relevant circumstances include the pattern of strikes and the prosecutor's questions and statements. *Batson*, 476 U.S. at 96-97.

Once the defendant makes a prima facie showing, the burden shifts to the prosecutor to offer a "race neutral explanation" for challenging the jurors. *Id.* at 97. A "race neutral" explanation is one based upon something other than the juror's race. The issue is the facial validity of the prosecutor's explanation. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York,* 500 U.S. 352, 360 (1991); *see also Rice v. Collins*, 546 U.S. 333, 338 (2006).

If a race-neutral explanation is offered, the court must then determine whether the defendant carried the burden to prove purposeful discrimination. *Batson*, 476 U.S. at 98. The ultimate question of discriminatory intent concerns an evaluation of the prosecutor's credibility. Such a decision represents a factual finding accorded great deference on appeal, which will not be overturned unless clearly erroneous. *See Miller-El v. Cockrell*, 537 U.S. 322, 339-40 (2003). The defendant bears the final burden of proving purposeful discrimination. *Batson*, 476 U.S. at 98.

Petitioner first raised this claim on collateral review in the state courts. Citing *Batson* and the foregoing standards, the trial court denied relief on this claim finding that Petitioner failed to fully develop his arguments and that he failed to establish that the

prosecutor removed the potential jurors on the basis of their race. *Crawford*, No. 11-09682-01 at *7-9.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The record does not reveal evidence of purposeful discrimination by the prosecutor in exercising the contested peremptory challenges. The mere fact that the prosecutor used peremptory challenges to excuse an African-American women and a Native American man from the jury, standing alone, is insufficient to establish a prima facie case of discrimination. *See United States v. Sangineto-Miranda*, 859 F.2d 1501, 1521 (6th Cir. 1988); *see also United States v. Harper*, 545 F. App'x 329, 337 (6th Cir. 2013) (citing *Sangineto-Miranda*); *accord Williams v. Woodford*, 306 F.3d 665, 681 (9th Cir. 2002); *Anderson v. Cowan*, 227 F.3d 893, 901-02 (7th Cir. 2000) (fact that prosecution used peremptory challenges to exclude two African-American women from jury, without more, was insufficient to raise inference of discrimination). Petitioner points to no facts, other than the striking of those two jurors, to support his *Batson* claim. Moreover, the Court's review of the record demonstrates that the relevant circumstances negate an inference of discrimination. The prosecutor did not question any of the jurors in an unusual, distinct, or discriminatory manner, nor did the prosecutor make any comments reflecting bias or discriminatory intent.

Nonetheless, the Court is aware that both the trial court proceeded to the second step of the *Batson* analysis. As such, the preliminary issue of whether Petitioner made a prima facie showing of discrimination may be considered moot. *See Hernandez*, 500 U.S. at 359; *Bryan v. Bobby*, 843 F.3d 1099, 1111 (6th Cir. 2016) (citing *Hernandez*). The question is thus whether the trial court reasonably determined that the prosecution provided a race-neutral explanation for the peremptory challenges and concluded that no

*Batson* violation occurred. The Court's review of the record indicates that the prosecution had sufficient, non-discriminatory reasons to excuse the jurors at issue here – juror 2 based upon her job as a social worker and jury 3 based upon his body language and demeanor which indicated that he did not want to serve as a juror. *See* 1/18/12 Trial Tr., pp. 110-12, 132-35. The trial court thus reasonably determined that Petitioner failed to show that the prosecution unconstitutionally exercised peremptory challenges to excuse the two jurors based upon their race. Habeas relief is not warranted on these claims.

### 4. Scoring of the Sentencing Guidelines (Claim V)

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in scoring Offense Variables 3, 4, 13, and 17 and Prior Record Variables 2 and 7 of the state sentencing guidelines. Respondent contends that this claim is time-barred, procedurally defaulted, and not cognizable on habeas review.

A sentence imposed within the statutory limits is generally not subject to federal habeas review. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). Claims which arise out of a state trial court's sentencing decision are not cognizable upon habeas review unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). In this case, Petitioner's sentences are within the statutory maximums for his offenses. *See* MICH. COMP. LAWS §§ 750.317, 750.82, 750.224f, 750.227b. Consequently, his sentences are insulated from habeas review absent a federal constitutional violation.

Petitioner first raised his sentencing issues on collateral review in the state courts and the trial court denied relief finding that he was procedurally barred from disputing the

scoring of the sentencing guidelines as a matter of state law. *Crawford*, No. 11-09682-01 at *12-13.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts and Petitioner is not entitled to relief even under a de novo standard of review. Petitioner's claim that the trial court erred in scoring the offense variables and the prior record variables of the Michigan sentencing guidelines is not cognizable on habeas review because it is a state law claim. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007); *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *Cheatham v. Hosey*, 12 F.3d 211, 1993 WL 478854, *2 (6th Cir. Nov. 19, 1993) (departure from state sentencing guidelines is a state law issue not cognizable on federal habeas review); *see also Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). Alleged errors in scoring the offense and prior record variables and determining the sentencing guideline range do not warrant federal habeas relief. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review"); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief does not lie for perceived errors of state law. *Estelle*, 502 U.S. at 67-68.

Petitioner also seems to assert that the scoring of the guidelines, and thus his sentence, was based upon inaccurate information. A sentence may violate federal due

process if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct. *Townsend*, 334 U.S. at 741; *see also United States v. Tucker*, 404 U.S. 443, 447 (1972) (citing *Townsend*); *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990) (defendant must have a meaningful opportunity to rebut contested sentencing information). To prevail on such a claim, a petitioner must show that the court relied upon the allegedly false information. *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Draughn v Jabe*, 803 F. Supp. 70, 81 (E.D. Mich. 1992).

Petitioner makes no such showing. Rather, the record shows that he had a sentencing hearing before the state trial court with an opportunity to challenge the sentencing information. He also had the chance to challenge his sentences on direct appeal and collateral review in the state courts. Petitioner fails to establish that the state trial court relied upon materially false or inaccurate information in imposing his sentences which he had no opportunity to correct. Habeas relief is not warranted on this clam.

## 5. Effectiveness of Appellate Counsel (Claims VI)

Lastly, Petitioner asserts that he is entitled to habeas relief because appellate counsel was ineffective. He essentially argues that appellate counsel erred by failing to raise his collateral review issues on direct appeal. Respondent contends that this claim lacks merit.

The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the appeal. *Strickland*, 466 U.S. at 687.

23

It is well-established, however, that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the … goal of vigorous and effective advocacy …. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

Petitioner first raised this issue on collateral review in the state courts. The trial court denied relief on this claim essentially finding that Petitioner failed to establish that appellate counsel erred and/or that he was prejudiced by counsel's conduct because the underlying claims that he believes counsel should have raised on appeal lack merit. *Crawford*, No. 11-09682-01 at *14-16.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner cannot establish that appellate counsel erred and/or that he was prejudiced by counsel's conduct in failing to raise his collateral review issues on direct appeal given the state court's and this Court's

determination that those underlying claims lack merit. Appellate counsel cannot be deemed ineffective for failing to raise issues that lack merit. *See Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Moreover, the record indicates that appellate counsel raised substantial issues concerning the sufficiency and great weight of the evidence, the addition of the felonious assault charge, and the validity of his felony firearm sentence (for which he was granted relief), on direct appeal. Petitioner fails to show that his other issues were clearly stronger or "dead bang" winners. He thus fails to establish that appellate counsel was ineffective. Habeas relief is not warranted on this claim.

## V. Conclusion

For the reasons stated, the Court concludes that Petitioner's habeas claims lack merit and that he is not entitled to federal habeas relief. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Having conducted the requisite review, the Court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right as to his habeas claims. Accordingly, the Court

**DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal from this decision cannot be taken in good faith. *See* FED. R. APP. P. 24(a). Accordingly, the Court **DENIES** Petitioner leave to proceed in forma pauperis on appeal. This case is **CLOSED**.

**IT IS SO ORDERED**.


s/Gershwin A. Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated: January 30, 2020




CERTIFICATE OF SERVICE

Copies of this Order were served upon parties and/or attorneys on January 30, 2020,
by electronic and/or ordinary mail.

s/Teresa McGovern
Deputy Clerk